We have four cases before us today for oral argument. The first case is the District Court opinion below in this case made a number of errors with respect to the application of this Court's precedence under Pre-AIA Section 112, paragraph 6. There are some that are common to both of the two asserted patents, some that are unique to one or the other. With the Court's permission, I'd like to start with the 691 patent that was asserted, and their independent claims 2 and 52 both contain essentially the same claim language that the District Court focused on in its decision, finding that that language invoked means plus function treatment under Section 112.6. Respectfully, that was erroneous for, we submit three basic reasons. The first is that the claim language at issue is not indeed an element of the invention itself. It's a recitation of the locus in which the invention is operating. It's an optional recitation of the essentially prior art systems that may be modified by the invention. The invention here is a novel form of graphical user interface for devices that allows for them to essentially be controlled by certain new techniques, including movement alone as opposed to clicking. So what's the utility of having an explanatory phase that characterizes the environment in which the invention operates, and having that in a claim? Well, Your Honor, I think it's a fair question, and to be fair, these are claims that were prior, but in any event, I think the inventor provided explanatory information about the environment of the invention for contextual purposes, because as a practical matter, it's an operating system or a graphical user interface for an operating system that creates a new mechanism for interacting with a device, and that is really best understood with reference to what it's modifying, or what it could modify, and what came before. And so in this case, the claim language refers to an existing program that optionally the claim recites may be updated with the novel interface of the claim. So for example, if we look at Claim 2, which is the independent apparatus claim, Claim 52 is a very similarly drafted method claim, but it refers to an existing program that can operate the movement of the pointer over a screen, and has one or more functions operated by one or more other methods, apart from it's a said two-step method, which is really the core part of the invention, this method of utilizing movement alone and not clicks to control the interface and to control the operating system. And the claim goes on to describe that inventive context, but indeed, we see that in the preamble, the graphical interface of the claim may comprise an update of an existing program. So the existing program is optional at best. So where's the algorithm that supports the function of these claims? Well, Your Honor, respectfully, I think the claims themselves recite a new set of control functions and control steps for operating an operating system. The claim term at issue, and the district court relied on, is this existing program term, which refers to the prior art, essentially, system or prior art operating system that would be modified. Our view is that there is no need for a disclosure of an algorithm, because this isn't the invention. It's not claiming this preexisting program is the invention. It's claiming that the invention modifies, or could be used to change and create a new operation instead of this preexisting operating system. You rely on our Cox decision for this idea that somehow the analysis of 112.6 is different if the words at issue are not part of the invention, but part of the environment? We do rely on the Cox decision, Your Honor. I think, to be clear, the key there is— It's not self-evident why that should be true if somebody would actually have to prove in an infringement case that even the environment is present. Well, I think two answers to that. First, we rely on the Cox case because ultimately what we're dealing with here is a finding of invalidity for indefiniteness, which is what the Cox case deals with as well. Did Cox say that if we removed the words at issue there from the claim, there wouldn't be any material difference? The Cox decision did indicate or suggest that the words that were at issue would not alter the scope of the claim materially if removed. I think Judge Newman took issue with that. One couldn't say that here, right? Because this is about changing something in existing programs. Actually, I think that's not correct. I would say that the words could be removed here because the claims recite optionally modifying an existing system. The graphical user interface of the claim could either be a modification of an existing system or a standalone completely new operating system or a new user interface. If you put aside this Cox environment stuff, what's your argument for why the terms are not 112-6 terms? Well, I think there are a couple. First, whether you look at it under Cox specifically or more generally under this court's broader precedence that you look to the claim as a whole and whether it informs one of skill in the art of the scope with reasonable certainty under Nautilus and other cases, I don't think that this language in any way is... I guess I'm confused. I thought that you had an argument that even aside from this environment versus invention claim, this is not a means plus function claim. Forget about 112-2 on its own, but this doesn't fall into 112-6 because the terminology used here has enough structure and in any event certainly more structure than the series of nonce words in the cases that we have equated with the word means. That's correct, Your Honor. That's the argument I'm making. I apologize for taking you to the wrong direction. So there are a couple of issues with respect to that. The first is that under even this court's cases post-Williamson, the court's precedent is clear that there is a presumption when the word means is not used that the claim term does not invoke means plus function treatment and shouldn't be construed that way. It's no longer a strong presumption under Williamson, but it is nonetheless under this court's clear on bond precedent a presumption. Here, no evidence was submitted to overcome that presumption. And I do want to direct the court's attention to a case that I think while referenced in some of the cases cited in the briefs wasn't expressly discussed, but which I think does speak to this issue. It's Apex Inc. versus Raritan Computer. That's at 325 F3rd 1364. And there, this court discussed in some detail the notion of how one overcomes this burden and how this presumption works in practice. And it speaks to it as one would expect any presumption, even a bare or not as strong presumption, that the party against whom the presumption lies, in this case Apple, must come forward with evidence that, according to this court, has to meet by a preponderant standard the showing that the words at issue in the claim would not convey structure to a person of ordinary skill in the art. And would not convey some sufficient structure. And what we have here, I take it, is their favorite case on the other side is Williamson, which they characterize as, which I think is not really right, as referring specifically to software when the term module referred indiscriminately to software or hardware, things that in a common sense way are so different, they're not meaningfully a single structure. And you want to say that if it had said software alone, maybe even existing software, that would be different. That's right, Your Honor. Basically, this court's cases that are relied on by Apple are all cases where words either means expressly or words that this court has expressly held to be nonce words like mechanism or module that don't convey even a distinction between hardware or software. Those might not convey any structure to a person of skill in the art. The court has conversely in the MIT case held that the word circuit is different, that that conveys structure. And at least one district court has... A very wide variety of possible structures, but nevertheless something quite different from a word like thing. That is correct, Your Honor. And this court's precedents are pretty clear that a class of structures is what's required, not some very specific structure. Can I ask you, I guess, a question? I don't remember seeing anything in the briefs about this, and maybe you know or you don't know. For 60 or maybe even 70 years, there have been patent claims about software. The PTO, in order to decide whether prior art invalidates such claims, needs to figure out whether terminology is 112.6 or not. Do we know anything about 60 years' worth of practice or what the MPEP says or is what's being requested or what was decided by the district court here and being requested by Apple something that would dramatically change or fit with existing practices or what? I think, Your Honor, I'm not aware of a specific precedent that speaks to that with the possible exception, and I'm going to forget the entire site, there's an older case, Beauregard, which has been relied on for many years that is endorsing of the form of claiming instructions on a recordable media as an apparatus claim. And I think the Patent Office has recognized that as well as generally speaking the notion... If the examiner sees a term program or code for doing something, capable of doing something, whatever, do the examiners say, ah, we're now in 112.6 land, look at the spec to see what the specific structure is? I am not aware of any either rule or general practice in the Patent Office that would follow that doctrine. I think my understanding at least is that the Patent Office looks at those claims and says, okay, it's code for doing this, that's what we should look at. I'm in my rebuttal time, but if the court has other questions, I'm happy to respond now. Okay, thank you. Thank you. Mr. Palmore, did I pronounce your name correctly? You did, Judge Rayner, thank you. Joseph Palmore here on behalf of Apple. The District Court correctly concluded that all the claims at issue here are indefinite and thus invalid. ZeroClick has claimed functions without disclosing adequate structure for performing those functions. It claims to use only the generic terms program and user interface. Can you answer the question about what's been going on in the PTO the last 60 years for terminology like this that I asked your opposite number? Yes, Judge Toronto, I don't know the answer to that question. I mean, I should say because this feels like, you know, you've got big game in your sights for something that feels like a dramatic change in existing practice. I can't myself think of a prior instance where the term program or the term code has been treated as invoking 112.6 and you would sort of transfer into 112.6 what feels like quite a large amount of software-related claiming. Am I mistaking what seems to be at stake and how big a change that is? I think you are overstating the ambition of our argument here. This is a patent-specific argument. We're not suggesting any kind of... But it would have consequences. It would have consequences, I would suggest, for the structure of this patent. So what this court's cases teach, especially post-Williamson, is that when looking for adequate structure in a claim term, one reads the claim term in light of the intrinsic record to see if there's adequate structure disclosed in that intrinsic record. And sometimes in a case like this, if the word program is used, perhaps there would be. The critical point here, though... When would that be if there wasn't a specific algorithm for that program? I mean, if there were something perhaps short of an algorithm, but something in the specification that suggested a structural... Well, what's short of an algorithm that's not a... that's a structure? Well, this court's case is post-Williamson. Every time that it's found 112.6 triggered, it hasn't found that adequate structure in the specification, so I can't point to an example of what it would be. But what the court has said... Can you think of one? I mean, this is what's troubling to me about it, because it does seem to... You're trying to say this isn't, you know, making it a 112.6 issue every time that you use the word program, but I'm not sure what you mean by that if we're looking at the specification to determine if there's structure, and if that structure is an algorithm. Even a very simplified one of, this is a program that does steps 1, 2, 3, 4. I mean, that's an algorithm. It may be not the specific code underlying the algorithm, but what short of that could be structure but not an algorithm? What this court's cases say is there must be some indication of how the specified function is to be performed. And what we have here is nothing like that. To the contrary, if I could refer the court to... Well, just think about it just in terms of, I guess, the first patent, the 691. The particular clause we're referring to is not a clause about the inventive contribution. This is a clause that refers to standard off-the-shelf existing programs that control the cursor. So there's a world of very specific things out there that this claim says we want to modify those things. Well, Your Honor, there's nothing in the intrinsic record that suggests this is kind of a class of off-the-shelf software. It's talking about existing programs. It's talking about existing programs. They chose to limit their claim... The control cursors, right, in the 691. Well, they claim much more than that. If you look at the complaint in this case, they're talking about the swipe movement on an iPad or an iPhone. That's the contribution that they say they want to add. That is, they want to modify the existing mouse drivers, to use that term, and by eliminating the click so that a movement affects the same... gives the same information. But the clause that we're talking about here is program... an existing program that can operate the movement of the pointer. That's an express reference to what already exists. Why would you have to describe that in the specification? Because if an inventor chooses to define his invention in terms of its operation with some existing thing, then that existing thing must comply with paragraph 2. So if my invention is a new kind of exhaust system that works with a certain kind of diesel engine, and that's how I lay out my claims, then I've got to identify that class of diesel engines with specificity, and that would matter for infringement, because if someone uses... Why? I mean, if you say, I'm inventing this new exhaust system. It comprises these five things. It works with all existing diesel engines. Isn't that specific enough? That might be. The question here, though, is in the computer context. In this court's cases, have special rules and special applications... Let me just be clear, because I think there's some fuzziness here about why you're asking us to put this under 112.6 instead of 112.2. In the engine case, clearly, we wouldn't be talking about 112.6. We'd be talking about 112.2, right? Because they're clearly both structures. Right, but so the two work together because when you're in the world of functional claiming, the structure that performs the function has to meet the 112.2 reasonable specificity requirement. But that's not your argument here. You're trying to say that there's no structure, and therefore it's indefinite under paragraph 2. That's the consequence of functional claiming without disclosure of adequacy. But to get there, you have to convince us that using the word existing program is functional claiming versus itself a reference to a structure sufficient to satisfy or at least get over the means plus function. Yes, we do bear that burden, Judge Hughes, and I think we carry it. Because if you look at the claim term, and I'm sure you have it in front of you, but this is one. Let me ask you this. If instead of existing program, it had said, and clearly they don't want to do this because they don't want to limit it, but they had given a list of defined existing programs like Microsoft Word and Excel spreadsheet and a list of 10 other things, would that still be indefinite? I think that would get them closer. I think that might be in the step two of the analysis. So if they listed those programs in the specification, it's possible that the claim would be limited to that disclosed structure. What if they put them in the claims? If they put them in the claims, I think that would be, again, a closer case. How could it be a close case at all? Because here it would be identifying specific programs that we know have specific algorithms. They don't have to disclose those, do they? They may not even have control over what those programs, the code in them is. Judge Hughes, the test would be, is it a name for structure and is it a name for structure adequate to perform the function? This is what I don't get because you're directing your argument at existing programs, not at the user interface, which is a different story. Existing programs refers to, unless you're disputing this, but it seems to refer to me to any kind of program that can operate on a computer using a pointer. Those things are out there and they exist. They have structure, they have code, they've been written. The fact that it's a broad category doesn't seem to me to render it a software code already in existence. Why isn't that the best way to look at this? Judge Hughes, I think that question is best answered by reference to the specification. So if you look at Appendix 72, Column 12, Line 6, the specification says, Thus the zero-click methods may be applied comprehensively to all existing software and all future software development. And it goes on there to talk about that this applies to all software and is defined functionally. So when you look at the specification, you don't see a specific list of brand name programs. What you see is further functional claiming. They are saying that this program works with all existing software that can perform these functions. That again is functional claiming. There's no structure, there's no specification as to how these existing programs perform this function. And that's critical because this is not just written address. Is that really true? Because it has the further limitations in the claim itself about programs that operate the movement of pointers. So it's not any program that exists or can conceivably exist in the future. It's ones that use a pointer and this is a new way for controlling those programs without a mouse. It's programs that can use the pointer. So it's defined in purely functional terms, not in structural terms. It's talking about programs that have this functional capability. That is pure functional claiming because there's no indication in either the claim term or in the specification as to structure as to how these programs do that. And that's critical because this is not just kind of an irrelevant backdrop. The whole point of the invention is to allow the selection of functions based on pointer movement. And what does the pointer movement? The existing program. So this existing program provides antecedent basis to... How would you write this claim? Because I mean I'm really confused about what, because they're not, they don't care what these programs specifically do. They care that they use a mouse to operate a pointer. And they've invented a new way of doing that that doesn't require a mouse and doesn't require clicking. And so how would you write these claims to make them definite without saying exactly this or without making them recite a laundry list of existing programs? I don't think a laundry list would be required. There would have to be some indication in either the claim elements or in the specification about how these existing programs operate the pointer. And I think that goes to the kind of Why? They don't care. They're inventing a new way to operate the pointer. They don't care how the existing programs do it. They've invented a way of doing it with movement alone rather than a click. So however those existing programs do it, I mean there may be some other serious problems here with this patent, but I mean there may be written description problems and all kinds of things, but they could care less whether the code in Microsoft Word operates on a mouse pointer in one way and the code in Excel does it another way, although they're Microsoft, so they probably do it the same way. They're doing it a new way, and they're I assume laying some kind of overface over the existing programs. Judge Hughes, right, they may not care. In fact, they're perfectly happy to have this kind of broad functional claim, but other inventors would care. And the reason for that is explained by this court's decision in Arista, Arista, Kraft and others, is that when you're talking about specialized functions on a computer, computers can do many different things in many different ways and one can't claim the function. But they're not operating the functions in the same way the programs are. They've invented a new way to do it, and that's clear isn't it? Right, a new way to do it. We're not talking about their graphical user interface being means plus function claiming, are we? No, but we're talking about what the graphical user interface uses to move the pointer. Don't we have a real serious preemption situation here? If a if you're allowed to claim all existing software that does something like that moves a pointer, and then in your patent you also claim or you also say that this is going to apply to all future software development. It seems to me that unless you have some sort of that claim to how you're going to perform this particular function, then in essence you're claiming all future functions that relate to the movement of a mouse, and who knows what the future holds there? How can this particular claim contemplate that it's going to apply to all future developments with respect to the use of a pointer? Perhaps in the future we can do it with a glance of our eye. Just right, Judge Reyna. That's the point that aristocrat makes, that because computer functions can be implemented in many different ways, one can't claim the function. And if I'm an inventor down the road who invents a new way of moving a pointer, perhaps with the movement of my eye, under ZeroClick's view, then that would be covered by this invention. Even though it didn't identify that mechanism for moving a pointer in these claim terms or in this claim, it claimed the function itself. So you're not making an argument here that there is indefiniteness as to how to make movement serve the function of a click. That's not what the claim phrase here is about. You are entirely making an argument about the existing program that can operate the movement of the pointer. It's not an argument about an insufficient definition of how to do the new thing. Yes, with a qualification, Judge Toronto. It's insufficient structure for how to do that. How to do what? How to move the pointer. If one claims function and there's no operating environment... But that's not the new thing. The new thing interacts with the old thing. That's the core of the invention, is using that movement of the pointer to select functions. And that existing software, that existing program, provides antecedent basis to dependent claims 22 and 40 which are only about the existing program. The existing program isn't just window dressing. Now it sounds to me like you're saying that the user interface itself is indefinite. Well, we think there are other problems with this patent. But that's not the argument we have up here. That's not what you convinced the district court to buy off on. No, we have other arguments that would be addressed by the district court in the event of a remand. But the argument here is that this isn't a claim... So we're up here assuming that we know how the graphical user interface operates. That it replaces a mouse click with just sheer simple movement. It's a two-step process. No, we don't know how the movement operates. We know what follows from the movement. The patent assumes the movement. It assumes there's some making that movement happen without disclosing what that structure is. Well, that's not the argument you've made. That is the argument. I don't understand how that's an argument you've made at all. That's an argument that the graphical user interface itself is indefinite. The claim as a whole is indefinite because this core term is indefinite, Your Honor. They've chosen to identify, to limit the scope of their claim. Let me ask it another way. If this said a graphical user interface wherein it operates all existing Microsoft products. So we now have a closed specific list. Would you still say this is indefinite? Or in that case, would graphical user interface be definite? If it said all of these Microsoft products that can operate the movement of a pointer? Yes. I think that would be a much closer case. It probably wouldn't be indefinite. And why not? Well, because they've structured a specifically named class of programs indeed an off the shelf. But it doesn't tell you anymore about what their graphical user interface does. No, but it tells me as a future inventor. So we know what their graphical user interface does from, sorry I'm keeping you over, but it seems to me the problem is you're going back and forth between the graphical user interface itself being sufficient structure without the program or not. The program is the foundation of the claimed invention. The existing program provides antecedent basis to the rest of the claim, provides antecedent basis to the dependent claims. They chose, they didn't necessarily have to do this, but they chose to limit their claim and in their reply brief page four they say, oh no, we're not saying you can read it out. They chose to limit their claim to a graphical user interface that could function with and take advantage of and leverage the operation of a group of existing programs. But they didn't define that group with specificity and they defined it in functional terms, purely functional terms, and the intrinsic record provides no evidence that there is any structure. There's no claimed structure and that renders it indefinite. All right, Mr. Powell, I think we got that. Thank you. Mr. Little, we'll restore you to four minutes of your time. Thank you, Your Honor. I want to start a little bit where I think some of the discussion with my friend ended relating to the relevant understanding of the claim itself. So, Judge Rayna, you asked a question about the claim essentially being claimed to cover all possible software that does anything. Respectfully, the part of the claim we're discussing, the existing program claim element is really referring to what comes before and what could be modified. The remainder, the body of the claim, which is not really before the court and none of those terms are at issue, is what actually defines the invention and sets forth the specific mechanisms of operation and if you will, an algorithm for how to control a pointer using the new invention. That's not before the court, so we get to the elements about midway through the claim wherein said GUI, graphical user interface, executes one or more functions by the completion of the following said two-step method and then it walks through the controlling things through movement as opposed to clicks. That's clearly what the invention is about. The fact is that's an invention that has broad application potentially to lots of different programs or operating systems, if you will, that could be modified to be controlled in this different method. The specification actually, it's quite lengthy but the inventor actually describes himself modifying a tablet type device with a touch screen to he was a medical doctor and he wanted a better way to input patient charting information and so he actually modified the interface of his own device. Are you saying that that's the structure that defines a program that can operate the movement of a pointer? No, I'm saying that that's the structure that defines the invention the program that can operate the movement is a reference to an existing essentially prior art program and the environment in which the inventive method I understand that, but so what you're saying is that there is no structure that defines a program that can operate the movement of a... there's no additional structure or... I think that well, I have two responses to that. First, I think that that is a sufficient recitation in and of itself of to the extent structure is required given the context of the claim I think that's a sufficient reference to structure. I think that also to argue that it's not is a burden that Apple bears and for which it came forward with no evidence and that under this court's precedence that would mean that the burden has not been carried that 1.12.6 applies. I would however suggest that there is elsewhere in the specification further discussion of such programs so at column 3 unsurprisingly it occurs in the background of the invention section because that's exactly what we're talking about, but much of column 3 is about such existing programs. We referenced in the brief the first portion of column 3 at lines 1 to 11 there's more discussion of this starting around line 34 35 that further discusses such existing programs but again this is in the context of what's in the art what's changed by the invention not what is the invention and so I do think as I mentioned that here the burden issue is important to the question that I think was asked about the change to making program essentially a nonce word to creating a new precedent which is what Apple's asking that the words program or program code are essentially nonce words setting aside whether program is a nonce word or not in Aristocrat we did say that if you claim a program you have to show some sort of algorithm you have to show how I would actually disagree with that characterization of Aristocrat so in Aristocrat I think what this court said was if you claim just a function unlimited could be hardware could be software so if you said a mechanism for doing something or a means for doing something or just a program no actually that's not what Aristocrat said no but I mean to go along with what you're saying I'm putting that into the list well but I disagree because I think this court's MIT cases would say if in Aristocrat you would say a circuit for doing this that wouldn't be means plus function that's not under 112.6 and the same should be true of program for the same basic reasons because you no longer if you say means could be hardware could be software could be anything but if you say circuit it has to be a circuit it has to be hardware what was the language in Aristocrat Aristocrat your honor used means it was actually recited as a means and Apple similarly points to the media rights technology case which also was a claim so after Williamson if the word means is not used and Aristocrat doesn't apply any time the word program is claimed I think your honor there may be other interpretive questions about what the claim covers but I think 112.6 is not the appropriate framework if you recite a program for doing something in the same way that you recite a structure so Aristocrat is still good law absolutely but in Aristocrat the difference is when you say anything in Aristocrat what that's addressing is cases where parties would say well our specification references a generic computer or a processor and that's structure so that's good enough and the court in Aristocrat said no you have to be talking about a specially programmed processor and to say that that's your corresponding structure you have to disclose what the programming is in some form what that algorithm is here we're not saying it's any computer any processor that can perform these functions it's gotta be particular code and the code is the structure it's excluding the universe of hardware any questions? we thank you very much